UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MICHAEL GRESHAM,

                Plaintiff,                    Case No. 2:10-cv-200

v.                                      Honorable Robert Holmes Bell

PATRICIA L. CARUSO, et al.,

                Defendants.

_____/

## OPINION

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

      Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Glen Caron, Deputy Warden Nanette Norwood, Warden Willie O. Smith, Assistant Deputy Warden Erica Huss, Regional Prison Administration Director Bruce Curtis, Hearing Investigator Parrish Smith, Resident Unit Officer Greg Chapin, Sergeant Unknown Shroud,

Resident Unit Officer Unknown Homquist, Resident Unit Officer Unknown Lehner, Corrections Officer Amy Scott, Captain Unknown Sanchez, Hearing Officer Unknown Marutiak, Assistant Resident Unit Supervisor Anna C. Griffin, Administrative Assistant Myken Breedlove, Administrative Assistant R. Groves, Assistant Deputy Warden Ken Tribley, Accountant Technician Stefanie Lewis, Resident Unit Manager John Payne, Acting Grievance Manager Richard Russell, Grievance Manager Jim James Armstrong, Acting Hearing Administrator Matthew D. Young, and Hearing Administrator Richard Stapleton.  The Court will serve the complaint against Defendant Resident Unit Officer Unknown Nehf.

## **Discussion**

### I.     Factual allegations

Plaintiff Michael Gresham, a prisoner at the Marquette Branch Prison (MBP), filed this civil rights action pursuant to 42 U.S.C. § 1983.  In Plaintiff's amended complaint (docket #26), he names Defendants Glen Caron, Deputy Warden Nanette Norwood, Warden Willie O. Smith, Assistant Deputy Warden Erica Huss, Regional Prison Administration Director Bruce Curtis, Hearing Investigator Parrish Smith, Resident Unit Officer Greg Chapin, Sergeant Unknown Shroud, Resident Unit Officer Unknown Homquist, Resident Unit Officer Unknown Lehner, Corrections Officer Amy Scott, Captain Unknown Sanchez, Resident Unit Officer Unknown Nehf, Hearing Officer Unknown Marutiak, Assistant Resident Unit Supervisor Anna C. Griffin, Administrative Assistant Myken Breedlove, Administrative Assistant R. Groves, Assistant Deputy Warden Ken Tribley, Accountant Technician Stefanie Lewis, Resident Unit Manager John Payne, Acting Grievance Manager Richard Russell, Grievance Manager Jim James Armstrong, Acting Hearing Administrator Matthew D. Young, and Hearing Administrator Richard Stapleton.

In the amended complaint, Plaintiff alleges that on December 1, 2010, through December 22, 2010, while he was confined at the Ionia Correctional Facility (ICF), his cell was shaken down by Sergeant Grandy, Resident Unit Officer Fair, Resident Unit Officer Martins, and other staff who are not named as Defendants in this case. Plaintiff states that the search was prompted by Law Librarian Givens, who asserted that Plaintiff had law books in his cell. On January 4, 2011, Defendants Chapin, Lehner, Homquist, Scott, and Shroud devised another shakedown scheme in which Defendant Payne refused to pick up Plaintiff's legal mail after reading the contents of the mail. Defendants Chapin, Lehner, Homquist, Scott, and Shroud entered Plaintiff's cell without a video camera and destroyed Plaintiff's legal books. Plaintiff claims that Defendant Payne refused to allow him to file a grievance on the incident.

Plaintiff includes a copy of the contraband removal slip, dated January 4, 2010, which states that five books belonging to the prison library were discovered in Plaintiff's cell. (Docket #26-1, p. 1.) Plaintiff received a misconduct ticket from Defendant Chapin charging Plaintiff with the destruction or misuse of property. The misconduct ticket stated:

> During a shakedown, searching specifically for law books, I found five books that appear to be law books due to their content. The books had covers removed and ink covering possible identification of being ICF Law books. Photographs taken and attached to this report. Price to replace the law books to be determined by Library staff and / or business office.

(Docket #26-1, p. 2.)

Plaintiff claims that the books belonged to him and that they were altered by Defendants to make it look as if Plaintiff had stolen the books. Plaintiff claims that he did not

- 3 -

receive a fair hearing on the misconduct ticket.  In addition, Plaintiff states that this ticket was designed to impede his ability to litigate his pending lawsuits against prison officials.

Plaintiff states that as a result of reporting that he was raped in Case No. 2:09-cv-231, he was placed in punitive segregation on August 12, 2009.  Plaintiff states that this placement was in close proximity to his return from the hospital on August 1, 2009.  Plaintiff also asserts that he made numerous requests for grievance forms from July 10, 2009, until January 6, 2011, which were denied or disregarded by Defendants Myken, Breedlove, Groves, Caron, Tribley, Russell, Armstrong, and other individuals who are not Defendants in this action.  Plaintiff also states that the refusal to answer his grievances deprived him of evidence to support the claims being asserted in his pending civil rights actions.

Plaintiff alleges that Defendants Curtis, Smith, Huss, and Payne treated him with deliberate indifference "as when Curtis was presented with the objective knowledge that Plaintiff had a serious need for protective custody" and when "Curtis et al learned about the violations and did not research reasonably given the circumstances and conditions especially in the light that Plaintiff had been raped, assaulted and received false misconducts all under the jurisdiction of the MDOC."  Plaintiff also claims that Defendant Curtis was involved in the security classification committee (SCC) reviews and did not address violations by Defendants Huss, Smith, Norwood or Payne.  Plaintiff asserts that Defendants Caruso and Straub "created a custom and practice of not reprimanding" MDOC officials for violating Plaintiff's rights.

Plaintiff states that as he alleged in Case No. 1:10-cv-1215, he received a false misconduct from J. Smith as part of a cover-up for the fact that Plaintiff was raped on July 10, 2009, and assaulted on September 13, 2010 by Resident Unit Officer J. Smith and Corrections Officer

Lemke, who are not named as Defendants in this case.  Plaintiff claims that Defendant Marutiak and

Defendant Parrish Smith denied him a fair hearing on the misconduct because Defendant Parrish

Smith was related to J. Smith.  Prisoner Perkins #707946 attested that J. Smith and Lemke threatened

to ram a 10 inch metal bar into his anus and that J. Smith and Lemke knew that Perkins and Plaintiff

had a joint legal action.  Plaintiff states that on December 29, 2010, Defendant Nehf warned prisoner

Perkins to stop helping "that half nigger Gresham," and stated that both Perkins and Plaintiff knew

"a little too much about how [staff] operate."  Defendant Nehf allegedly told prisoner Perkins that

he had one more chance to stop writing affidavits and that Defendant Nehf had helped staff rape

Plaintiff with a metal object and cover it up.  Defendant Nehf and other officials also told prisoner

Perkins that Plaintiff could die "like [Assistant Deputy Warden] Mullen."

       Plaintiff claims that Defendants' conduct violated his constitutional rights.  Plaintiff

seeks damages and injunctive relief.

       II.    <u>Failure to state a claim</u>

       A complaint may be dismissed for failure to state a claim if "'it fails to give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.").  The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

        To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

        Plaintiff claims that on January 4, 2011, Defendant Payne refused to pick up his legal mail after reading the contents of the mail. Plaintiff further contends that Defendants Chapin, Lehner, Homquist, Scott, and Shroud entered Plaintiff's cell without a video camera and destroyed Plaintiff's legal books. To the extent that Plaintiff is claiming that this conduct violated his right of access to the courts, this claim is properly dismissed. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court,

- 6 -

it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Accord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993). Because Plaintiff has failed to allege such an injury, his access to courts claims are properly dismissed.

In addition, Plaintiff's claim that the seizure / destruction of his law books violated due process is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part*

by *Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."  *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B.  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies."  MICH. COMP. LAWS § 600.6419(1)(a).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action

- 8 -

would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Accordingly, Plaintiff's due process claims will be dismissed.

Plaintiff claims that he was prevented from filing grievances by several of the named Defendants.  Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure.  *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Recently, in the context of considering retaliation claims, the Sixth Circuit has stated that there is a First Amendment right to file a institutional grievance.  Depending upon whether the retaliation arose from an inmate's constitutionally protected conduct, either a First Amendment or due process standard may apply to a retaliation claim.  *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000).  If the inmate is engaged in constitutionally protected conduct, the First Amendment standard enunciated in *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir.1999) (en banc) applies. *Thaddeus-X* requires the prisoner to establish that (1) he was engaged in protected conduct, (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct, and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394.  Under the due process standard, where the prisoner was not engaged

- 9 -

in constitutionally protected conduct, the prisoner must show "an egregious abuse of governmental power" or behavior that "shocks the conscience". *Herron*, 203 F.3d at 414 (citing *Cale v. Johnson*, 861 F.2d 943, 950-51 (6th Cir. 1988)).

In two cases involving a claim of retaliation for filing institutional grievances, the Sixth Circuit applied the *Thaddeus-X* standard, thus indicating that an inmate's filing of institutional grievances is constitutionally protected conduct. *See Shehee v. Luttrell*, 199 F.3d 295, 300-301 (6th Cir. 1999); *Scott v. Kilchermann*, No. 99-1711, 2000 WL 1434456, at *2 (6th Cir. Sept. 18, 2000). In *Shehee*, 199 F.3d at 300-301, the Sixth Circuit applied the *Thaddeus-X* standard and expressly stated that the filing of institutional grievances is constitutionally-protected conduct for which a prisoner cannot be retaliated against. Similarly, in the unpublished decision of *Scott*, 2000 WL 1434456, at *2, the Sixth Circuit indicated that an inmate has a First Amendment right to file a grievance against prison officials and not to be retaliated against under the *Thaddeus-X* standard as long as the grievance is not frivolous. *Accord Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir.1996) (in the context of a retaliation claim, an involuntarily committed mental patient, who is a "an individual in the custody of the state," has a constitutional right to petition use the hospital grievance procedure); *see also Herron*, 203 F.3d at 415 (in the context of a retaliation claim, inmate had a First Amendment right to file a nonfrivolous "grievance," i.e., a lawsuit, against prisoner officials).

However, Plaintiff has not alleged that Defendants' actions were taken in a retaliatory manner. Plaintiff merely asserts that Defendants did not give him grievance forms when he requested such forms. Plaintiff fails to allege any facts demonstrating a retaliatory motivation for this conduct *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc); *see also Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (indicating that the *Thaddeus-X* standard applies to

- 10 -

claims of retaliation against an inmate for filing lawsuits). In addition, the Sixth Circuit has never held that an inmate has an independent constitutional right to file an institutional grievance, apart from the First Amendment right not to be retaliated against for filing one. Therefore, Plaintiff's claims regarding the denial of grievance forms are properly dismissed.

Plaintiff makes a conclusory claim that he was denied protective custody in violation of his Eighth Amendment rights by Defendants Curtis, Willie O. Smith, Huss, and Payne, despite the fact that Plaintiff had been raped, assaulted and received false misconduct tickets while under the jurisdiction of the MDOC. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that a failure to act would cause a prisoner to suffer serious harm. *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

> In order to establish liability under the Eighth Amendment for a prison official's failure to protect her, an inmate must demonstrate that the official was deliberately indifferent "to a substantial risk of serious harm" to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To demonstrate deliberate indifference, an inmate must present evidence from which a trier of fact could conclude "that the official was subjectively aware of the

- 11 -

> risk" and "disregard [ed] that risk by failing to take reasonable measures to abate it." *Id.* at 829, 847, 114 S.Ct. 1970.

*Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).

In this case, Plaintiff fails to allege any specific facts regarding the circumstances surrounding his request for protective custody. Rather, Plaintiff merely asserts that he was assaulted and mistreated while under the jurisdiction of the MDOC. Plaintiff does not suggest that his request was prompted by specific threats or other circumstances which occurred immediately prior to the request and which would lead him to believe that he was in danger. Nor does Plaintiff state whether the failure to place him in such custody resulted in him being attacked or injured. Because Plaintiff has not made allegations showing that Defendants Curtis, Smith, Huss, and Payne were subjectively aware of a risk to Plaintiff and that they disregarded that risk by failing to take reasonable measures to abate it, his failure to protect claims are properly dismissed.

Plaintiff claims that Defendants Parrish Smith and Marutiak denied him a fair hearing on a misconduct ticket because Defendant Parrish Smith was related to non-party Resident Unit Officer J. Smith, who had written the ticket. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.  But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he.  The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted for crimes occurring after April 1, 1987.  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board.  481 F.3d at 440.  Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement.  355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) ("plaintiff's disciplinary hearing and

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system.  MICH. COMP. LAWS § 800.33(5).

- 13 -

major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"),
adopted as judgment of court, Order of Jan. 4, 2011.  In the absence of a demonstrated liberty
interest, plaintiff has no due-process claim.  *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th
Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner
may be able to raise a due-process challenge to prison misconduct convictions that result in a
significant, atypical deprivation.  *See Sandin v. Connor*, 515 U.S. 472 (1995).  Plaintiff has not
identified any significant deprivation arising from his convictions.  Unless a prison misconduct
conviction results in an extension of the duration of a prisoner's sentence or some other atypical
hardship, a due-process claim fails.  *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).

Plaintiff alleges that Defendant Nehf told prisoner Perkins that he should stop helping
Plaintiff.  Defendant Nehf also allegedly told prisoner Perkins that he had helped staff rape Plaintiff
with a metal object and cover it up.  Plaintiff's complaint contains no other allegations regarding the
conduct of Defendant Nehf.  Plaintiff himself fails to actually allege that Defendant Nehf was either
involved in raping Plaintiff, or that he covered up such a rape.  However, liberally construing
Plaintiff's complaint, it appears that Plaintiff is asserting that Defendant Nehf was involved in raping
Plaintiff and covering up the incident.  Therefore, Plaintiff's Eighth Amendment claims against
Defendant Nehf are not frivolous and may not be dismissed upon initial review.

Finally, Plaintiff makes a conclusory assertion that Defendants Caruso and Straub
created a custom and practice of not reprimanding MDOC officials for violating Plaintiff's rights.
Plaintiff also names Deputy Warden Norwood, Assistant Resident Unit Supervisor Griffin,
Accountant Technician Lewis, and Hearing Administrator Young as Defendants but fails to make

- 14 -

any specific allegations against them in his amended complaint.  Liability under Section 1983 must be based on more than merely the right to control employees.  *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).  Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*.  *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325.  A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct.  *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982).  *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights.  *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985).  However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct.  *Leach*, 891 F.2d at 1246.  Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable.  *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992).  In addition, plaintiff must show that defendant had some duty or authority to act.  *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient

- 15 -

grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Caruso, Straub, Norwood, Griffin, Lewis, and Young were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Caruso, Straub, Norwood, Griffin, Lewis, and Young had in this action involve the denial of administrative grievances or the failure to act. Defendants Caruso, Straub, Norwood, Griffin, Lewis, and Young cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Caruso, Straub, Norwood, Griffin, Lewis, and Young are properly dismissed for lack of personal involvement.

II.     Plaintiff's pending motions

Plaintiff has filed a motion for order to reinstate Defendants Marshall, Tasson and Burnett, who were named in Plaintiff's original complaint, but not in his amended complaint (docket #34). The court notes that on December 29, 2010, it found that Plaintiff had not filed his complaint on the requisite form as required by W.D. Mich. LCivR 5.6(a). The court directed Plaintiff to file an amended complaint on the requisite form and instructed Plaintiff that the amended complaint would take the place of the original complaint. Plaintiff was instructed that the amended complaint must include all of the Defendants that Plaintiff intended to sue and all of the claims that he intended

- 16 -

to raise.  Plaintiff apparently did not follow these instructions and now wishes to correct his oversight.

The court does not abuse its discretion by denying an amendment where the plaintiff has failed to submit a proposed amended complaint.  *Roskam Baking Co v. Lanham Machinery*, 288 F.3d 895, 906 (6th Cir. 2002).  Should Plaintiff wish to amend his complaint a second time, he must move to do so and attach a proposed second amended complaint on the requisite form which includes all of the Defendants that Plaintiff wishes to sue and all of the claims that he intends to raise.  Because Plaintiff has failed to comply with this requirement, his motion to amend (docket #34) is denied.

Plaintiff has also filed a motion for the appointment of counsel to represent him in this civil rights action (docket #35).  The Court has duly considered the motion and has concluded that the appointment of counsel is not warranted at this time.  The motion is therefore denied.  The Court reserves the right to appoint counsel at a future date if it is later determined that such an appointment is warranted.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Caron, Norwood, Willie O. Smith, Huss, Curtis, Parrish Smith, Chapin, Shroud, Homquist, Lehner, Scott, Sanchez, Marutiak, Griffin, Breedlove, Groves, Tribley, Lewis, Payne, Russell, Armstrong, Young, and Stapleton will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendant Nehf.

An Order consistent with this Opinion will be entered.

Dated: <u>November 17, 2011</u>                     <u>/s/ Robert Holmes Bell</u>
                                                     ROBERT HOLMES BELL
                                                     UNITED STATES DISTRICT JUDGE